UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LAURA A. COMPTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 1:17-cv-146 |
| v. ) | |
| ) | Judge Steger |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**I.     Introduction**

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), of the denial by the Commissioner of the Social Security Administration ("SSA") of her application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-434.  The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 15].  For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] shall be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 18] shall be **GRANTED**, and the decision of the Commissioner shall be **AFFIRMED**.  Judgment in favor of the Defendant shall be entered.

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security when this action was initiated. Nancy A. Berryhill has since assumed that role.  Accordingly, the names have been changed.  Fed. R. Civ. P. 25(d).

1

## II. Background

### A. Procedural History

Plaintiff applied for disability insurance benefits on December 21, 2013, alleging disability as of November 1, 2013, due to limitations from hypokalemic periodic paralysis and osteoarthritis (Tr. 159-62, 172).[2] Her claim was denied initially (Tr. 65-77), and on reconsideration (Tr. 81-94), and Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 106-07). On April 7, 2016, ALJ Suhirjahaan Morehead heard testimony from Plaintiff and a vocational expert (Tr. 38-64). On May 16, 2016, the ALJ issued a decision finding Plaintiff not disabled (Tr. 22-33). When the Appeals Council denied Plaintiff's request for review on April 20, 2017, the ALJ's decision became the Commissioner's "final decision" subject to judicial review under 42 U.S.C. § 405(g) (Tr. 1-4).

### B. The ALJ's Findings

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity; osteoarthritis; and neurocognitive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[2] "Tr." refers to pages of the administrative record filed by the Commissioner.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she is limited to unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 1, 1963, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2013, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 24-33].

### C. Relevant Facts

#### 1. Plaintiff's Age, Education, and Past Work Experience

Born in 1963, Plaintiff was 50 years old on her alleged onset date and 53 years old when the ALJ rendered her decision (Tr. 33, 159). She had a college education and had worked as an executive director and support coordinator for a social services agency (Tr. 173-74).

### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

## III. Analysis

### A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation,

4

the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments

of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## B. Discussion

Plaintiff challenges the ALJ's determination that he was not under a disability, as defined by the Act, from November 1, 2013, the alleged onset date. The two issues she has identified for review will be discussed below.[3]

### 1. Whether the ALJ erred by finding that Plaintiff's alleged hypokalemic periodic paralysis was not a medically determinable impairment, and whether the decision was supported by substantial evidence

Plaintiff asserts that the ALJ erred in not finding that she had a medically determined impairment known as hypokalemic periodic paralysis (HOKPP).[4] In evaluating the severity of Plaintiff's impairments, the ALJ recognized that November 2013 laboratory testing indicated Plaintiff was hypokalemic, with a result of 2.9 mmol/L of potassium, as compared to a norm of

---

[3] Plaintiff has presented these issues in reverse order. However, as the Commissioner explained in her brief, the agency follows a sequential evaluation process, and the errors alleged by Plaintiff at the earlier stages of the process would impact the Court's analysis of the ALJ's conclusions at the later steps. As such, the Court will address Plaintiff's arguments in the order they arise in the sequential evaluation process.

[4] According to the National Institute of Health: "Hypokalemic periodic paralysis is a condition that causes episodes of extreme muscle weakness typically beginning in childhood or adolescence. Most often, these episodes involve a temporary inability to move muscles in the arms and legs. Attacks cause severe weakness or paralysis that usually lasts from hours to days. Some people may have episodes almost every day, while others experience them weekly, monthly, or only rarely. Attacks can occur without warning or can be triggered by factors such as rest after exercise, a viral illness, or certain medications. Often, a large, carbohydrate-rich meal or vigorous exercise in the evening can trigger an attack upon waking the following morning. Although affected individuals usually regain their muscle strength between attacks, repeated episodes can lead to persistent muscle weakness later in life. People with hypokalemic periodic paralysis have reduced levels of potassium in their blood (hypokalemia) during episodes of muscle weakness." https://ghr.nlm.nih.gov/condition/hypokalemic-periodic-paralysis (June 6, 2018).

3.5 - 5.2 mmol/L (Tr. 25, 353, 383). However, she found that Plaintiff's hypokalemia was not a severe impairment (Tr. 25). She also found that there was insufficient objective evidence to support a diagnosis of HOKPP (Tr. 25). Plaintiff underwent genetic testing for HOKPP and the testing was negative (Tr. 387). She contends that, since genetic testing is not 100% sensitive, it is possible that she has the condition despite the lack of a positive test. *Id.* She reports that a cousin has been diagnosed as having HOKPP – although it is not known if this diagnosis was confirmed through genetic testing (Tr. 385, 514-15). One of her doctors, Dr. Charles Clarke, stated her muscle weakness and fatigue could be due to HOKPP and that he would like her to be seen at the Mayo Clinic for another opinion and further testing (Tr. 395). Plaintiff's rheumatologist, Dr. Brett Parker, after examining Plaintiff on June 18, 2014, stated:

> It is hard to say with certainty whether this is hypokalemic periodic paralysis. A muscle biopsy may be the best way of identifying a definite abnormality (myopathic changes with vacuoles). It is [sic] reasonable option alternatively, not to make any changes, given the relative benefit of Diamox and of Topamax.

(Tr. 514). Plaintiff's primary care physician, Dr. Selmon Franklin, noted a diagnosis of hypokalemic periodic paralysis; however, this diagnosis appears to be based solely upon Plaintiff's self-report of her symptoms and a previous diagnosis of HOKPP (Tr. 494, 492, 486, 484, 478-77). The ALJ concluded that Plaintiff had not proven a diagnosis of HOKPP by objective medical evidence, and, therefore, it was not a medically determinable impairment.

7

The statutory requirement that Plaintiff must prove the existence of a medically determinable impairment is explained in the Commissioner's regulations at 20 C.F.R. § 404.1529(b) (2016):[5]

> *Need for medically determinable impairment that could reasonably be expected to produce your symptoms, such as pain. . . .* Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

Medical signs and laboratory findings are defined regulatory terms: "signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b) (2016). "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." 20 C.F.R. § 404.1528(c);

Here, the ALJ recognized that Plaintiff reported symptoms suggestive of HOKPP, including episodic weakness, and she also reported feeling better after potassium repletion (Tr. 25, 385). The ALJ also discussed that genetic testing for HOKPP was negative (Tr. 25, 387, 658-59). Plaintiff's doctor noted that testing was not 100% sensitive, and that a muscle biopsy

---

[5] As mentioned in a prior footnote, after the ALJ's decision, several regulations were modified related to the consideration of medical evidence. The current version of 20 C.F.R. § 404.1529, "How we evaluate symptoms, including pain," is effective March 27, 2017. The version applicable to the ALJ's decision is 20 C.F.R. § 404.1529, "How we evaluate symptoms, including pain," effective March 31, 2006 to March 26, 2017. The ALJ followed the rules and regulations that were in force as of the date of the decision.

may be the best way of identifying a definite abnormality (Tr. 25, 659). The doctor stated that it was "hard to say with certainty" whether Plaintiff's symptoms were caused by HOKPP, although they were associated with episodes of hypokalemia (Tr. 25, 658-59). The ALJ recognized that subsequent diagnoses of HOKPP were either made by individuals who were not an acceptable medical source (Tr. 25, 485-87, a physician's assistant), or were based on Plaintiff's subjective reports and not objective evidence (Tr. 25, 514-15). Both were appropriate considerations by the ALJ. *See* 20 C.F.R. § 404.1508 (2016) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms (see § 404.1527).");[6] 20 C.F.R. § 404.1513(a) (2016) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). See § 404.1508.").[7] *See also Hatton v. Comm'r of Soc. Sec.*, Case No. 16-14463, 2018 WL 1278916, at *5 (E.D. Mich. Feb. 14, 2018) (a medically determinable impairment must be established by medically acceptable clinical and laboratory diagnostic techniques); *Jones v. Comm'r of Soc. Sec.,* Case No. 3:15-cv-428, 2017 WL 540923, at *6 (W.D. Ohio Feb. 2, 2017) (same). Based on the evidence in the record, the ALJ properly determined that there were insufficient medical signs or laboratory findings to find HOKPP to be a medically determinable impairment. The ALJ's conclusion is also supported by the opinions of George Walker, M.D., and Thomas Thrush, M.D., state agency medical consultants who evaluated

---

[6] The current version of 20 C.F.R. § 404.1508 was reserved by 82 Fed. Reg. 5864, effective March 27, 2017. The version applicable to the ALJ's decision is 20 C.F.R. § 404.1508, "What is needed to show an impairment," effective August 1, 1991 to March 26, 2017.

[7] The current version of 20 C.F.R. § 404.1513, "Categories of evidence," was effective March 27, 2017. The version applicable to the ALJ's decision is 20 C.F.R. § 404.1513, "Medical and other evidence of your impairment(s)," effective September 3, 2013 to March 26, 2017.

Plaintiff's claims at the initial and reconsideration levels of agency review, and likewise found that HOKPP was not a medically determinable impairment (Tr. 73, 89).

Moreover, even if the ALJ erred in finding that Plaintiff did not have a medically determinable impairment of HOKPP, this error would be harmless. An erroneous decision that an alleged impairment is not medically determinable constitutes harmless error if the ALJ found another impairment to be severe and thus continued the five step evaluation. *Hatton*, 2018 WL 1278916, at * 6 ("If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed non-severe"); *Jones*, 2017 WL 540923, at *7 (If an ALJ considers the limiting effects of both severe and non-severe impairments in determining the RFC, any error in failing to find a particular impairment severe is harmless.") (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)).

In the instant case, while the ALJ did not find HOKPP to be a medically determinable impairment (and thus non-severe), she did find other impairments to be severe. Therefore, she continued her evaluation to the later steps and assessed how much work Plaintiff still could do. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (citing 20 C.F.R. § 404.1520 (sequential evaluation)). When making this assessment, the ALJ must "consider limitations and restrictions imposed by all of the individual's impairments, even those that are non-severe." *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). As long as the ALJ considers all of

an individual's impairments, the "failure to find additional severe impairments . . . does not constitute reversible error." *Kirkland*, 528 F. App'x at 427.

The ALJ's decision reflects that, in assessing Plaintiff's RFC, she considered all of Plaintiff's alleged symptoms, including those symptoms that Plaintiff attributed to HOKPP (Tr. 28-29). Notably, the ALJ found made the following findings:

- Plaintiff's hypokalemia (as opposed to HOKPP) is a medically determinable, though non-severe, impairment (Tr. 25).

- Plaintiff alleged muscle weakness, muscle stiffness, dizziness, breathlessness, hearing difficulties, memory problems, concentration problems, pain throughout her body, and fatigue (Tr. 28, 42-60, 173, 179-81, 185, 200-14, 231).

- Plaintiff alleged episodes of semi-consciousness during which she appeared to "pass out" (Tr. 28, 173).

- Plaintiff alleged migraines and other headaches, emotional lability, a resurgence of dyslexic symptoms, and troubled sleep (Tr. 28, 42-60, 175, 187).

- As a result of these symptoms, Plaintiff alleged that she could not consistently get to work on time, and often had to go home early (Tr. 28, 42-60, 173, 231).

- Plaintiff alleged limitations in her ability to sit, squat, kneel, talk, climb stairs, use her hands, stand, walk, complete tasks, perform personal care, do household chores, cook, drive, type, interact with others, supervise others, handle money, and handle stress (Tr. 28-29, 42-60, 173, 187, 200-14, 231).

- Plaintiff's alleged symptoms and alleged limitations, including those attributable to HOKPP, were not entirely consistent with her treatment history and objective medical evidence.

- The evidence of record supported only those limitations included in the RFC (Tr. 29-31).

Because the ALJ properly considered all of Plaintiff's alleged symptoms and limitations in assessing her RFC, remand is not required.

### 2. Whether the ALJ erred by failing to explain why she gave little weight to the opinions of treating physicians and which source she relied upon in reaching her conclusions

Plaintiff asserts that it was error for the ALJ not to give controlling weight to the treating physicians' opinions, and not to provide an adequate explanation for this decision. She also asserts that the ALJ erred by not giving adequate reasons for the weight given to the opinions of the other medical sources.

The Regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c) (2016). The Regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant] . . . with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1502 (2016); *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Pursuant to § 404.1502, "an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) [may] be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)."

If a medical source is considered a treating physician, an ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by

12

medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(2013); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the ALJ does not give controlling weight to the treating physician's opinion, she must, pursuant to the SSA's own regulations, provide good reasons for not doing so. And, the ALJ must still evaluate the amount of weight to give the treating physician's opinion based on a number of factors, *to wit*, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-45 (6th Cir. 2004), *see also* 20 C.F.R. § 404.1527 (2016).

Here, the record contained opinions from treating, examining, and non-examining sources, all "acceptable" medical sources under the regulations. *See* 20 C.F.R. §§ 404.1502 (2016) (terms defined); 404.1527 (2016) (evaluating medical opinions); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014) (citations omitted).

Plaintiff's treating rheumatologist, Richard Brackett M.D., stated in October 2015 that, during an 8-hour workday, Plaintiff could occasionally lift and carry up to 5 pounds, and never more; she could sit for 2 hours total, stand for 1 hour total, and walk for 1 hour total (Tr. 662). She would miss more than two days of work each month (Tr. 662). She could occasionally bend, and could never stoop, squat, kneel, climb stairs, or crawl (Tr. 663). She could occasionally

reach above her shoulders, walk on uneven surfaces, and perform fine and gross manipulation (Tr. 663). The ALJ gave little weight to Dr. Brackett's opinion (Tr. 30).

Another of Plaintiff's treating physicians, Selmon Franklin M.D., stated in February 2016, that Plaintiff was unable to work (Tr. 702-03). He stated that Plaintiff would miss more than two days of work per month (Tr. 702). During an 8-hour workday, she could occasionally lift and carry up to 10 pounds, and never more; she could sit for 15 minutes at a time and less than 1 hour total, stand for 5 minutes at a time and less than 15 minutes total, and walk for 1 hour at a time and 1 hour total (Tr. 702). She could occasionally push, pull, and perform gross manipulation, and never bend or perform fine manipulation (Tr. 702). She would need to lie down once a day for two hours and would need to elevate her legs for one or two hours a day (Tr. 703). She would need to rest and take an unscheduled break for 15 to 20 minutes every hour (Tr. 703). She would need to avoid temperature extremes (Tr. 703). The ALJ gave little weight to Dr. Franklin's opinion (Tr. 30-31).

Dr. Walker, a State agency medical consultant, evaluated Plaintiff's claim at the initial level of agency review and found that she had no severe physical impairments (Tr. 65-77). Dr. Thrush, a State agency medical consultant who evaluated Plaintiff's claim at the reconsideration level of review, made the same finding (Tr. 81-94). With respect to her mental impairments, State agency psychological consultants at both the initial and reconsideration levels found that she had no severe mental impairment (Tr. 65-77, 81-94). The ALJ gave great weight to these opinions (Tr. 26).

In evaluating the opinion evidence, the ALJ recognized that Dr. Brackett was Plaintiff's treating rheumatologist, and that his examinations of Plaintiff did produce some abnormal results (Tr. 30). However, the ALJ found that Dr. Brackett's opinion was inconsistent with the mostly normal findings from his extremely detailed examinations. Consequently, the ALJ reasonably afforded Dr. Brackett's opinion little weight (Tr. 30).

The ALJ also recognized the treatment relationship between Plaintiff and Dr. Franklin, but discussed that his treatment notes consistently reflected essentially normal physical examinations (Tr. 30-31). She also noted that Dr. Franklin based his opinion in part on Plaintiff's supposed HOKPP, which was confirmed only by Plaintiff's own subjective reports of symptoms and was not a medically determinable impairment (Tr. 30-31).

Plaintiff contends that the ALJ ignored the objective medical evidence without an in-depth explanation as to why it was being discounted. However, the ALJ provided the analysis elsewhere in her decision, and referenced it in her discussion of the medical opinions. (*See* Tr. 30 ("As noted above. . .") and Tr. 31 ("as explained above . . .")). The ALJ reasonably found that Dr. Brackett and Dr. Franklin's opinions were inconsistent with the essentially normal examination findings throughout the record (Tr. 29-30, 282, 284-85, 291, 295, 298-99, 302-03, 386, 391, 395, 478-79, 482, 484, 487, 489, 492, 494, 536, 544, 546-47, 560, 567, 569, 581, 590-91, 596, 599, 601, 610-11, 615-16, 620-21, 636, 646, 658, 665, 673, 676, 682-83, 687-88, 694-95). As previously discussed, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record.

Plaintiff also argues that the ALJ improperly inserted her own opinion as to the severity of Plaintiff's impairments in place of her treating medical professionals. The ALJ appropriately cited to objective medical evidence and the lack of significant findings as good reasons for discounting the opinions of Plaintiff's treating physicians (Tr. 30-31). The normal objective findings are "some medical evidence" to support the RFC, and the ALJ does not need to base the RFC assessment on a medical source opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("The district judge correctly decided that 'neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC.'") (remanded on other grounds). To require the RFC to correspond to a medical source opinion would be "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (citation omitted). Additionally, the ALJ gave great weight to the opinions of the state agency medical consultants who evaluated Plaintiff's claims and found that she had no severe impairments whatsoever (Tr. 26, 65-77, 81-94). Their opinions support Plaintiff's RFC for unskilled, medium work. The ALJ properly evaluated the medical opinions, and Plaintiff's RFC is supported by substantial evidence on the record as a whole. Remand for further evaluation is not required.

IV.   **Conclusion**

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] shall be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 18] shall be

**GRANTED**, and the decision of the Commissioner shall be **AFFIRMED**. Judgment in favor of the Defendant shall be entered.

**ENTER**.

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE